**Nos. 2025-1286, 2025-1296**

# United States Court of Appeals
# for the Federal Circuit

NETLIST, INC.,

*Appellant*

v.

SAMSUNG ELECTRONICS CO., LTD., MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS, LLC,

*Appellees*

On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2023-00455, IPR2023-01142, IPR2023-00454, IPR2023-01141

---

## NETLIST'S REPLY BRIEF

---

William H. Milliken
Richard M. Bemben
Richard A. Crudo
STERNE KESSLER GOLDSTEIN & FOX PLLC
1101 K Street, NW
Floor 10
Washington, DC 20005
(202) 371-2600

*Counsel for Appellant Netlist, Inc.*

August 14, 2025

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2025-1286, 2025-1296

**Short Case Caption** Netlist, Inc. v. Samsung Electronics Co., Ltd.

**Filing Party/Entity** Netlist, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/14/2025

Signature: /s/ William H. Milliken

Name: William H. Milliken

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Netlist, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable            ☐  Additional pages attached

| | | |
|---|---|---|
| Hong Annita Zhong<br>IRELL & MANELLA LLP | Philip Warrick<br>IRELL & MANELLA LLP | |
| Jonathan Lindsay<br>IRELL & MANELLA LLP | Chris Limbacher<br>HEIM, PAYNE & CHORUSH LLP | |
| Jason Sheasby<br>IRELL & MANELLA LLP | Michael Heim<br>Heim, Payne & Chorush LLP | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable            ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................3

I.    The Board's obviousness conclusion rests on reversible legal error. ............3

    A.    Samsung's obviousness theory and the Board's findings relied on *modifying* Perego's Rambus memory modules to be JEDEC-compliant. ...................................................................................4

        1.    Perego's memory modules use the Rambus architecture— not JEDEC...........................................................................4

        2.    Samsung never argued—and the Board never found—that Perego *discloses* JEDEC-compliant modules; Samsung argued only that Perego's modules could be so *modified*..........5

    B.    Samsung's proposed modification undisputedly would render Perego inoperable for its intended purpose and change its principle of operation. ......................................................................10

        1.    The Board conceded that making Perego's modules JEDEC-compliant would render Perego "non-functional" for Rambus, and Samsung's attempts to avoid the import of this concession fail..................................................................10

        2.    Making Perego's modules JEDEC-compliant undisputedly would cripple Perego's buffer-translation functionality...........19

II.    The Board misapplied *KSR* and misread Perego...........................................22

    A.    *KSR*'s "market forces" rationale cannot be used to expand the teachings of a single reference. .........................................................22

    B.    The Board's finding that Perego suggests JEDEC-compliant modules lacks substantial evidence.....................................................23

    C.    Samsung concedes that the Board misunderstood the difference between memory devices and memory modules. ...............................28

III.    If the Court agrees that a skilled artisan would not have modified Perego's modules to be JEDEC-compliant, reversal is warranted...............29

IV.    Samsung's admissions confirm that the Board violated the APA. ...............30

CONCLUSION ....................................................................................32

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) ........................................................27

*Adidas AG v. Nike, Inc.*,
  963 F.3d 1355 (Fed. Cir. 2020) ..................................................15, 19

*Align Technology, Inc. v. International Trade Commission*,
  771 F.3d 1317 (Fed. Cir. 2014) ...........................................9, 26, 27

*Axonics, Inc. v. Medtronic, Inc.*,
  73 F.4th 950 (Fed. Cir. 2023) .........................................................14

*Bosch Automotive Service Solutions, LLC v. Matal*,
  878 F.3d 1027 (Fed. Cir. 2017) ......................................................17

*Chemours Company FC, LLC v. Daikin Industries, Ltd.*,
  4 F.4th 1370 (Fed. Cir. 2021) ....................................................*passim*

*Enova Technology Corp. v. Seagate Technology (US) Holdings Inc.*,
  706 F. App'x 987 (Fed. Cir. 2017) ................................................16

*In re Fritch*,
  972 F.2d 1260 (Fed. Cir. 1992) ..................................................15, 19

*In re Gordon*,
  733 F.2d 900 (Fed. Cir. 1984) ...........................................10, 15, 19

*Honeywell International Inc. v. 3G Licensing, S.A.*,
  124 F.4th 1345 (Fed. Cir. 2025) ......................................................7

*Impax Laboratories Inc. v. Lannett Holdings Inc.*,
  893 F.3d 1372 (Fed. Cir. 2018) ......................................................24

*Intel Corp. v. Qualcomm Inc.*,
  21 F.4th 784 (Fed. Cir. 2021) ...............................................14, 15, 16

*Knox v. Department of Justice*,
  125 F.4th 1059 (Fed. Cir. 2025) ....................................................30

*Medtronic, Inc. v. Teleflex Innovations S.á.r.l.*,
  69 F.4th 1341 (Fed. Cir. 2023) .......................................................16, 18

*Merck Sharp & Dohme B.V. v. Warner Chilcott Co.*,
  711 F. App'x 633 (Fed. Cir. 2017) ...........................................................15

*In re Mouttet*,
  686 F.3d 1322 (Fed. Cir. 2012) ................................................................16

*Provisur Technologies, Inc. v. Weber, Inc.*,
  50 F.4th 117 (Fed. Cir. 2022) ...................................................................30

*In re Ratti*,
  270 F.2d 810 (C.C.P.A. 1959) ...................................................................20

*Raytheon Co. v. Sony Corp.*,
  727 F. App'x 662 (Fed. Cir. 2018) ......................................................14, 15

*Safeway Stores 46 Inc. v. WY Plaza LC*,
  65 F.4th 474 (10th Cir. 2023) ...................................................................30

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943)..................................................................................5, 9

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ................................................................29

*Trivascular, Inc. v. Samuels*,
  812 F.3d 1056 (Fed. Cir. 2016) ................................................................18

*University of Maryland Biotechnology Institute v. Presens Precision
  Sensing GmbH*,
  711 F. App'x 1007 (Fed. Cir. 2017) .........................................................18

*In re Wright*,
  866 F.2d 422 (Fed. Cir. 1989) ..................................................................24

**Other Authorities**

https://en.wikipedia.org/wiki/Air_quotes ...................................................11

## INTRODUCTION

Perhaps the best indication that things went awry below is the remarkable fact that Samsung is not willing to own the obviousness argument it made to the Board.[1] Samsung contended below that the claims were obvious because a skilled artisan would have "been motivated to implement" Perego's memory modules in a format that "uses DIMM module input signals, according to … JESD21-C" (the JEDEC module standard). Appx271. In other words, a skilled artisan would have *modified* Perego's Rambus modules to make them comply with the standard of Rambus's principal competitor.

Now—faced with the Board's fatal finding that this modification "would make Perego's system non-functional for Rambus," Appx29; Appx83—Samsung tries to pull a U-turn, advancing an incoherent reading of the Board's decision that would attribute this proposed modification to *Netlist*. BBr. 43–46. To hear Samsung tell it on appeal, there was no need for any modification in the first place because Perego actually "*disclose[s]* JEDEC-compliant embodiments." *E.g.*, BBr. 46 (emphasis added).

Samsung's interpretation of the Board's decision is implausible on its face. And the interpretation goes from implausible to impossible when considered in the

___

[1] This brief refers to Appellees collectively as "Samsung."

1

full context of the record. Samsung never argued below—and the Board never found—that Perego actually discloses JEDEC-compliant memory modules. Instead, Samsung maintained that certain features of Perego were "similar" to the JEDEC standard and that these similarities, combined with JEDEC's market dominance, would have motivated a skilled artisan to *modify* Perego's Rambus modules to make them JEDEC-compliant. *That* is the argument the Board credited—even while acknowledging that the modification would make Perego's system "non-functional for Rambus."

The Court, then, is left with a straightforward legal question: can the Board accept an obviousness theory that admittedly requires making the primary reference "non-functional" in the very environment for which it was designed? This Court's precedent permits only one answer: no. BBr. 40–44. Reversal is warranted for that reason alone.

To be sure, the Board's decision contains additional legal and factual errors, discussed in Netlist's opening brief and below. Indeed, Samsung practically admits that the Board ignored one of Netlist's main arguments for patentability—a textbook APA violation. But the Court need not reach these other issues if it agrees on the foundational legal point that the Board erred in adopting a modification of Perego that rendered it inoperable for its intended purpose.

**ARGUMENT**

**I.    The Board's obviousness conclusion rests on reversible legal error.**

The Board's determination that a skilled artisan would have modified Perego's Rambus modules to make them JEDEC-compliant was legally flawed. Not only would this modification have made Perego's system "non-functional for Rambus," Appx29; Appx83; BBr. 40–44, it would have destroyed Perego's ability to translate between different types of memory controllers and memory devices, thereby fundamentally changing its principle of operation, BBr. 44–48.

Rather than engage with these arguments, Samsung tries to dodge them. Samsung repeatedly contends that Perego actually discloses JEDEC-compliant embodiments, such that there is no need to modify Perego's modules in the first place. *See* RBr. 29 (heading entitled "Perego discloses JEDEC-compliant embodiments"), 41 (heading referring to "Perego's JEDEC-compliant embodiments"), 46 (heading entitled "Petitioner's proposed combination does not render Perego's JEDEC-compliant embodiments inoperable for their intended purpose"); *see generally* RBr. 41–58. But Perego does *not* disclose JEDEC-compliant modules; Samsung never made that argument below; and the Board never made that finding. *Infra* Section I.A. The Board's actual obviousness theory is irreconcilable with this Court's precedent, as Netlist has explained and Samsung fails to rebut. *Infra* Section I.B.

3

**A.    Samsung's obviousness theory and the Board's findings relied on *modifying* Perego's Rambus memory modules to be JEDEC-compliant.**

**1.    Perego's memory modules use the Rambus architecture—not JEDEC.**

Every memory module disclosed in Perego uses the Rambus architecture and its trademark linear channel. BBr. 38–40. That point is plain enough from Perego's disclosures, *see id.*, and Samsung's concessions on appeal confirm it. In particular, Samsung admits that:

- Perego (the individual) was a Rambus engineer, RBr. 46;

- Perego (the patent) is assigned to Rambus, RBr. 46;

- Rambus and JEDEC were direct competitors and used systems with "important technical difference[s]," RBr. 4–5;

- the "point-to-point" topology Perego discloses is the hallmark of Rambus XDR, RBr. 7;

- there is "no doubt that a POSITA would understand the distinction between Rambus and JEDEC," RBr. 32; and

- Perego's use of data buffers in its modules is fundamentally inconsistent with JEDEC compliance because JEDEC-compliant modules of the time *did not have data buffers*, *see* RBr. 42; *see also* Appx736 n.4; Appx7337 (6:25–33) (Perego explaining that its modules differ from JEDEC modules in their inclusion of data buffers).

From that last point, in particular, it inexorably follows that Perego's modules are *not* JEDEC-compliant. If they were, they would not have data buffers. The Board acknowledged this: the above-cited passage of Perego "shows that Perego discloses data buffering on the memory module," which "JEDEC-standardized

4

modules" of the day lacked. Appx30; Appx84 (same). The record is therefore clear that Perego does not disclose JEDEC-compliant modules.

> **2.    Samsung never argued—and the Board never found—that Perego *discloses* JEDEC-compliant modules; Samsung argued only that Perego's modules could be so *modified*.**

Samsung now purports to dispute whether Perego discloses JEDEC-compliant memory modules. Indeed, most of its appeal arguments rest on that premise. *See, e.g.*, RBr. 29–38, 41–58.

Perego does no such thing, as explained above. Indeed, Samsung's suggestion on appeal that Perego (the individual) invented and disclosed a JEDEC-compliant module having a data buffer without so much as nodding to that fact in his patent strains credulity. If Perego had somehow discovered a way to add data buffers (with their attendant "benefits," RBr. 40) to a JEDEC-compliant module *for the first time ever*, he surely would have said so.

More to the point, however, Samsung never argued below that Perego discloses JEDEC-compliant modules, and the Board never made any such finding. So this argument was forfeited and in any event cannot serve as a basis for affirmance under *Chenery*.

a.    Start with Samsung's arguments to the Board. Samsung's petition never contended that Perego discloses JEDEC-compliant modules. Samsung's background description of the reference contained no such assertion. Appx254–

258. Its substantive obviousness arguments did not either. Appx267–335. Instead, Samsung argued that a skilled artisan would have "combine[d] the teachings of [the JEDEC standard] with the memory module described in Perego" to make a JEDEC-compliant "variation of Perego." Appx269–270; *see also* Appx271 (skilled artisan would have "implement[ed] Perego's memory modules" in a format that complied with "JEDEC standards, including JESD21-C and JESD79-2").

At most, Samsung argued in its petition that Perego discloses certain features "consistent with" or "similar to" the JEDEC architecture. Appx275; Appx288; Appx305; Appx323. But Samsung never went so far as to say that Perego actually discloses JEDEC-compliant modules. That is a telling omission; Samsung explicitly asserted that a different reference in a different ground (Ellsberry) "expressly incorporates by reference the corresponding JEDEC standards." Appx352.

In reply, Samsung did not dispute that "Perego discloses Rambus-style modules." Appx730. Instead, Samsung argued that the Rambus architecture was *irrelevant* because Samsung was *combining* Perego with the JEDEC standards to make Perego's modules JEDEC-compliant. Appx730–731.[2]

_____

[2] Netlist focuses on the JEDEC memory *module* standard (JESD21-C) instead of the JEDEC memory *device* standard (JESD79-2), *see* RBr. 8, because the salient feature of Samsung's obviousness theory is that it requires making

Samsung now asserts that it argued below that Perego discloses "JEDEC-compatible embodiments." RBr. 45 (citing Appx270–272; Appx12315–12317). But nowhere on the cited pages (or anywhere else) did Samsung argue as much. Tellingly, Samsung cannot even keep its story straight on appeal. For example, Samsung claims that "there is no need to modify" Perego's "Rambus-style embodiment" "[b]ecause Perego already *discloses* JEDEC-compliant embodiments." RBr. 60 (emphasis added). But, in defending the Board's reliance on *KSR*'s market-forces rationale, Samsung characterizes the Board's findings differently (and more accurately): a skilled artisan would have "*implement[ed]* Perego's teachings in a JEDEC-compliant module." RBr. 28 (emphasis added); *see also* RBr. 41. Samsung cannot have it both ways. If Perego's modules were JEDEC-compliant, there would be no need to combine them with the JEDEC standards at all. *Cf.* RBr. 41, 60.

In short, Samsung never argued below that Perego discloses JEDEC-compliant memory modules. Samsung is thus precluded from advancing this contention on appeal. *See Honeywell Int'l Inc. v. 3G Licensing, S.A.*, 124 F.4th

---

Perego's memory *modules* JEDEC-compliant (which would require adoption of JESD21-C). JESD79-2 is largely a sideshow, because Perego already discloses JEDEC-compliant memory *devices*. Samsung's attempt to reframe the discussion around JESD79-2 appears to be yet another example of Samsung and the Board conflating memory devices (chips) with memory modules (memory hardware that includes chips). *Infra* Section II.C; BBr. 56–57.

1345, 1350–51 n.4 (Fed. Cir. 2025) (appellee is precluded from raising argument on appeal that it failed to raise before the Board).

b.      Unsurprisingly, in view of Samsung's failure to argue the point, the Board did not find that Perego discloses JEDEC-compliant modules. Samsung cites no passage of the Board's decision making such a finding—because there is none. The best Samsung can do is quote the Board's finding that "Perego's disclosure *suggests* a JEDEC-compliant interface to a memory controller." RBr. 29 (quoting Appx28; Appx82) (emphasis added). But that comes nowhere close to a finding that Perego actually discloses a memory module that complies with the JEDEC standard. Instead, the Board agreed with Samsung that "Perego's disclosure suggests a module that *can be configured* to have a JEDEC interface." Appx24 (emphasis added); Appx78–79 (same).

The Board's statement that this "modification[] would make Perego's system non-functional for Rambus, *not for JEDEC*," Appx29 (emphasis added); Appx83, does not suggest that the Board found Perego discloses JEDEC-compliant modules. *Contra* RBr. 44. On the contrary, it reinforces that the theory at issue required a *modification*—one that would change Perego's modules from the Rambus architecture to the architecture of its principal competitor (and, in the process, make the modules "non-functional for Rambus").

Consistent with Samsung's arguments, the Board found, at most, that Perego discloses certain features *consistent* with the JEDEC standards and that these disclosures would have motivated a skilled artisan to *make Perego's modules JEDEC-compliant. E.g.*, Appx24; Appx78–79; *see* BBr. 32–33, 49–56. That finding lacks substantial evidence for the reasons explained in Netlist's opening brief, BBr. 51–56, and below, *infra* Section II. But, critically, even if the finding were correct, it is not the same as a finding that Perego discloses modules that already comply with the JEDEC standard. The Board never made the latter finding. It therefore cannot serve as a basis for affirmance: "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *accord Align Tech., Inc. v. Int'l Trade Comm'n*, 771 F.3d 1317, 1324 (Fed. Cir. 2014).

\*    \*    \*

There is no basis for a finding that Perego discloses JEDEC-compliant modules. That is case-dispositive because, as explained below, the theory the Board actually adopted—which required modifying Perego's Rambus modules to be JEDEC-compliant—is not legally viable under binding precedent.

9

**B.    Samsung's proposed modification undisputedly would render Perego inoperable for its intended purpose and change its principle of operation.**

The Board impermissibly found the claims obvious based on a modification of Perego that would have rendered it inoperable for its intended purpose and changed its principle of operation. BBr. 37–48. Samsung does not and cannot reconcile the modification theory the Board actually credited (as opposed to the Perego-already-discloses-JEDEC-modules theory Samsung has invented for appeal) with this Court's precedent.

**1.    The Board conceded that making Perego's modules JEDEC-compliant would render Perego "non-functional" for Rambus, and Samsung's attempts to avoid the import of this concession fail.**

A skilled artisan would not have attempted Samsung's proposed combination because making Perego's modules JEDEC-compliant would have—by the Board's own admission—rendered them "non-functional" in the very Rambus architecture for which Perego was designed. BBr. 40–44; *see* Appx29; Appx83. The Board's conclusion otherwise was legally erroneous. BBr. 40–44; *see In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984).

Samsung offers two lines of argument in response. *First*, Samsung contends that, when the Board made this finding, it was referring to a modification that Netlist—not Samsung—had proposed. *Second*, Samsung attempts to distinguish this Court's inoperability precedents by arguing that Samsung's modification to

10

Perego would not render *all* Perego's embodiments inoperable.

Both arguments fail. The first relies on a nonsensical interpretation of the Board's decisions (and the record generally). The second rests (again) on the incorrect premise that Perego discloses JEDEC-compliant memory modules. The Board's adoption of an obviousness theory contrary to this Court's precedent requires reversal.

### a.    Samsung misreads the Board's decision.

The Board's reference to "Patent Owner's 'proposed' modifications," Appx29; Appx83, was plainly a typo; *Samsung*—the petitioner—was the one proposing to modify Perego. BBr. 32 n.10. Samsung, however, resists this common-sense conclusion and maintains (at 21 n.3, 42–46) that the Board was literally referring to a modification that *Netlist* proposed. In particular, Samsung would have this Court believe that the Board was being sarcastic by using "air quotes" in a final written decision. RBr. 44–45.[3] According to Samsung, these "air quotes" were meant to imply that Netlist had "mischaracterized [Samsung's] actual proposed combination" in a way that "differed materially from [Samsung's] actual theory." *Id.* That reading cannot be squared with the record.

---

[3] Presumably Samsung means "scare quotes." *See* https://en.wikipedia.org/wiki/Air_quotes ("Air quotes are often used to express satire, sarcasm, irony or euphemism and are analogous to scare quotes in print.").

As explained above, Samsung consistently argued throughout the IPRs that a skilled artisan would *modify* Perego's modules to make them comply with the relevant JEDEC standards. *Supra* Section I.A.2. That is precisely the modification the Board was analyzing in the passages at issue. *See* Appx29 (referring to "modification of Perego's architecture and memory system with a JEDEC-compatible bus"); Appx83 (same). Indeed, the Board's language mirrors the language from Samsung's petition: Samsung argued that "[a] POSITA would have therefore been motivated to implement Perego's memory modules in a registered DIMM format with DDR memory devices that fits into DIMM connectors and uses DIMM module input signals, according to JEDEC standard, including JESD21-C and JESD79-2." Appx271.

What is more, the paragraph in question follows multiple pages in which the Board explicitly analyzed "*Petitioner['s]* assert[ion] that a person of ordinary skill in the art would have been motivated to make Perego's memory modules JEDEC-compliant." Appx20 (emphasis added); Appx75; *see generally* Appx19–29; Appx73–83. Nowhere in these pages did the Board allude to any modifications of Perego suggested by Netlist, or any supposed "mischaracteriz[ation]" of Samsung's theory by Netlist, *contra* RBr. 45. There was none. Netlist—as the patent owner defending against Samsung's invalidity challenge—never suggested any modifications to Perego (nor, of course, did Netlist have any burden to do so).

12

*See generally* Appx618–684, Appx787–822. It simply argued that a skilled artisan would not have made the modification *Samsung* proposed. Had the Board meant what Samsung now claims it meant, it could have easily said so by referring to "Patent Owner's characterization of Petitioner's modification" (or similar language). The Board's quotation marks around "proposed" were more likely intended to show that the Board was quoting Netlist's patent owner response, which the Board had cited in the preceding sentence. *See* Appx656 (Netlist's POR arguing that "*Petitioner's proposed combination* would severely cripple Perego's memory system") (emphasis added).

In short, the reference to "Patent Owner's" modifications, Appx29; Appx83, was self-evidently a typo. Samsung's strained reading of the Board's statement is not credible.[4]

### b.    Samsung misconstrues precedent.

Aside from its misreading of the Board's decisions, Samsung's principal response to the inoperability point is its refrain about Perego disclosing JEDEC-compliant embodiments. *See, e.g.*, RBr. 46–49, 54, 55, 56. "[T]hose embodiments," Samsung argues, "can be combined with the JESD79-2 JEDEC

---

[4] Netlist did not raise this typographical error with the Board or the Director, *see* RBr. 20–21 & n.3, because Netlist believed (and still believes) that the fact of the typo is beyond doubt given the context described above.

standard without modification and without losing any operability." RBr. 54. But, as explained above, the premise that Perego discloses JEDEC-compliant modules fails. That fact, in turn, renders inapposite each case on which Samsung relies.

For example, Samsung cites cases where the proposed modification might have frustrated *some* relevant purposes or objectives of the prior art but would have furthered others. In *Axonics, Inc. v. Medtronic, Inc.*, 73 F.4th 950 (Fed. Cir. 2023), for instance, the challenger proposed adding electrodes to Young to arrive at the claimed neurostimulator. *Id.* at 954–55. Young disclosed a neurostimulator for the trigeminal nerve root and stated that it "could be improved" by adding additional electrodes, which had "proved … effective" in "other neurostimulation settings." *Id.* at 954. This Court held that a skilled artisan would have been motivated to add electrodes to Young—even though doing so might not have been "feasible in the trigeminal nerve region" due to space constraints—because "a skilled artisan may be motivated to combine particular features of different references … to secure some benefits at the expense of others." *Id.* at 956–57. Young itself suggested potential benefits from the proposed modification in "other neurostimulation settings" besides the trigeminal nerve region. *Id.* at 954, 957–58. So the proposed combination did not render Young inoperable as a neurostimulator (for the trigeminal-nerve context or any other); rather, it simply entailed a trade-off.

*Intel* and *Raytheon* rest on similar trade-off rationales. The *Intel* Court,

reasoning that "simultaneous advantages and disadvantages do not necessarily obviate motivation to combine," found that a skilled artisan would have been motivated to disable Der's "variable-gain mixer"—even though that feature was "important" to Der—because this modification would have beneficially reduced power consumption and been appropriate certain "use cases." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 795, 800–01 (Fed. Cir. 2021). In *Raytheon*, the challenger's proposed modification of Liu was legally permissible because it would have, at worst, "thwarted … just two of Liu's six stated goals" but furthered all others. *Raytheon Co. v. Sony Corp.*, 727 F. App'x 662, 667 (Fed. Cir. 2018).

These cases are not instructive here because no trade-off rationale applies. Once Samsung's incorrect premise that Perego discloses JEDEC-compliant modules is discarded, we are left with the Board's finding that Samsung's modification would have rendered Perego "non-functional" for the only module architecture Perego *does* disclose. There is no trade-off. This Court's inoperability and principle-of-operation cases thus govern. *See* BBr. 40–44 (discussing, among other cases, *In re Fritch*, 972 F.2d 1260 (Fed. Cir. 1992); *In re Gordon*, 733 F.2d 900 (Fed. Cir. 1984); *Adidas AG v. Nike, Inc.*, 963 F.3d 1355 (Fed. Cir. 2020); and *Merck Sharp & Dohme B.V. v. Warner Chilcott Co.*, 711 F. App'x 633 (Fed. Cir. 2017)). Samsung has little to say about these cases save its incorrect assertion that "Perego discloses alternative JEDEC-compliant embodiments." RBr. 54.

15

To the extent Samsung reads *Intel* to hold that an obviousness analysis need not account for the intended purpose of a prior-art reference at all, *see* RBr. 52, that reading is irreconcilable with *Intel* itself. *Intel affirmed* the Board's finding that a skilled artisan would not have combined Der's transistors with Valla because doing so "would impair the low impedance *that Valla seeks for its amplifier*." 21 F.4th at 795 (emphasis added). Indeed, this Court explicitly rejected a reading of *Intel* similar to Samsung's in *Medtronic, Inc. v. Teleflex Innovations S.á.r.l.*, 69 F.4th 1341 (Fed. Cir. 2023), and squarely held that it would be legal "error for the Board to ignore evidence that a proposed modification would interfere with a reference's stated purpose." *Id.* at 1349. Nor can Samsung's interpretation of *Intel* be squared with *Chemours* (cited at BBr. 46). There, the Court reversed the Board's reliance on an obviousness theory that would have undermined the prior-art Kaulbach reference's goal of a "narrow molecular weight distribution," which Kaulbach identified as a "key feature." 4 F.4th 1370, 1377 (Fed. Cir. 2021).

Samsung also cites cases that rejected an inoperability argument on the facts. *See Enova Tech. Corp. v. Seagate Tech. (US) Holdings Inc.*, 706 F. App'x 987, 993 (Fed. Cir. 2017) (affirming Board's finding that combination of Sullivan and SATA would not have been inoperable "where Sullivan specifically disclosed that it could be used in a SATA system"); *In re Mouttet*, 686 F.3d 1322, 1332–33 (Fed. Cir. 2012) (affirming Board's finding that modifying prior-art arithmetic processor

to use electrical connections instead of optical ones would not have affected its operability as an arithmetic processor). Here, however, *the Board found* that Samsung's modification would have rendered Perego "non-functional for Rambus." Appx29; Appx83. So this is a "case where the Board's own *factual* findings demonstrate that the Board's *legal* conclusion was wrong." BBr. 1.

*Bosch Auto. Serv. Sols., LLC v. Matal*, 878 F.3d 1027 (Fed. Cir. 2017) (cited at RBr. 48, 57) is even further afield. The passage of that opinion Samsung cites concerns anticipation, not obviousness, and does not discuss inoperability at all. *Id.* at 1038–39 (finding that reference disclosing "a 125 kHz signal" as well as signals transmitted "using 'ranges of frequencies'" anticipated claims requiring a "plurality of activation means"). If Perego actually disclosed a JEDEC-compliant module with a data buffer, *Bosch* might be relevant here. But, precisely because Perego discloses no such thing, Samsung was forced to propose *modifying* Perego's modules to be JEDEC-compliant. *Supra* Section I.A.

That Samsung can identify *some* objective achieved by its proposed modification—namely, compliance with the market-dominant JEDEC standard, *see, e.g.*, RBr. 55—is legally insufficient to establish a motivation to combine. In *Chemours*, for example, the petitioner's proposed modification of Kaulbach would have allowed Kaulbach to coat wires faster. 4 F.4th at 1375; *contra* RBr. 55 (incorrectly stating that "*Chemours* found no evidence of reason or motivation").

17

But this Court still reversed the obviousness conclusion because achieving that objective would have "necessarily involv[ed] altering" the very feature of Kaulbach the reference emphasized as "critical." *Id.* at 1376 (citing *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016)).

This Court's consistent rejection of obviousness theories that render the prior art inoperable or fundamentally change its operation rests on sound policy. "[A] person of ordinary skill generally would not be motivated to modify a reference by contradicting its basic teachings, or by making it 'inoperable for its intended purpose.'" *Univ. of Md. Biotech. Inst. v. Presens Precision Sensing GmbH*, 711 F. App'x 1007, 1010 (Fed. Cir. 2017). A contrary rule would invite rampant hindsight bias into the obviousness analysis. BBr. 37–38; *see Medtronic*, 69 F.4th at 1349 (rejecting challenger's argument that a "proposed modification's destruction of a device's primary purpose" was "legally irrelevant" because the argument was "at odds with common sense and gives in to the very hindsight bias the obviousness inquiry is designed to avoid"). Because Samsung's obviousness combination runs afoul of this fundamental principle, the Board legally erred in accepting it. BBr. 34.

### c.    The Board's legal error requires reversal.

Contrary to Samsung's suggestion, *see* RBr. 2, 24, 28, 38, this legal error requires reversal even if the Board's factual findings about "market forces" are

18

accepted. Samsung's modification is improper as a matter of law because it would have rendered Perego inoperable for its intended purpose and fundamentally changed its principle of operation; accordingly, "market forces" arising from JEDEC's purported market dominance are irrelevant. *Cf. Chemours*, 4 F.4th at 1375 (impermissible for obviousness theory to destroy a "critical" feature of the prior art even if it would lead to certain benefits).

To return to the VHS-Betamax analogy, a skilled artisan would not have read a 1980s user manual for Betamax to have suggested rebuilding a Betamax player to play VHS tapes simply because VHS was winning in the market. BBr. 3. That commonsense principle—reflected in cases like *Adidas*, *Fritch*, and *Gordon*—requires reversal here.

### 2. Making Perego's modules JEDEC-compliant undisputedly would cripple Perego's buffer-translation functionality.

The Board's obviousness conclusion rests on a second, related (but distinct) reversible error—one to which Samsung has no real answer. Perego repeatedly touts the flexibility of its innovative buffer, which can translate between different types of memory controllers and different arrangements of memory devices to enable backward- and forward-compatibility. BBr. 44. Making Perego's modules JEDEC-compliant, as Samsung proposed, would destroy this capability because JEDEC-compliant modules lack any such translation functionality. BBr. 45 (citing expert testimony); *contra* RBr. 49 (stating incorrectly that Netlist presented only

19

"attorney argument" on this point). Neither Samsung nor the Board disputed this below. BBr. 45.

Samsung does not meaningfully dispute it on appeal either. Samsung does not cite a shred of evidence for the proposition that one could retain Perego's buffer translation functionality while making the module JEDEC-compliant. *See* RBr. 51–52. That is because there is none.[5]

Instead, Samsung invokes the Board's more general finding that Perego's flexibility would suggest compatibility with a JEDEC system as well as a Rambus one. RBr. 49–52. But, even if that finding were supportable (it is not, *see infra* Section II.A), it is no answer to the point that a JEDEC-compliant memory module does not and cannot have the *translation functionality* that Perego touts.

That Perego describes the translation functionality as optional, *see* RBr. 52, is likewise no answer. The functionality is undisputedly *important* to Perego, and the Board nowhere explained *why* the skilled artisan would jettison it. *But see Chemours*, 4 F.4th at 1376; *In re Ratti*, 270 F.2d 810, 813 (C.C.P.A. 1959).

Samsung's attempted distinction of *Ratti*, *see* RBr. 54, is no distinction at

---

[5] Contrary to Samsung's contention (at 51), Netlist is not arguing categorically that "only a Rambus architecture would take advantage of Perego's 'buffer translation functionality.'" Netlist's point is a narrower one: if one made Perego's memory modules compliant with JESD21-C, as Samsung proposed, the modules could no longer take advantage of that functionality.

all. As Samsung acknowledges, "in that case a 'sealing effect' would be lost in a proposed combination." *Id.* In this case, Perego's flexible buffer-translation functionality would be lost. The appropriate conclusion in both cases is the same: a skilled artisan would not have pursued such a modification.

Samsung is entirely correct that "being 'flexible' means that the feature should be useful in multiple different environments, not limited to a single application." RBr. 62. That is the point. While all Perego's embodiments use Rambus memory *modules*, those modules' buffer translation functionality enables the modules to work in many different kinds of environments and applications involving different types of memory *controllers* and different types of memory *devices*—all without the module itself needing to be modified. The undisputed evidence shows that, if Perego's modules *were* modified to comply with the JEDEC standard, that translation functionality would be lost. The resulting modules would be limited to a single application (the JEDEC standard) and they would be "non-functional" in the very Rambus environment on which Perego is based. Appx29; Appx83. The Board identified no reason why a skilled artisan would neuter Perego's flexibility in this way.

*      *      *

In sum, even assuming all the Board's factual findings were correct (they are not, *see infra* Section II), its conclusion that a skilled artisan would have modified

Perego's modules to be JEDEC-compatible fails on the law because it runs afoul of this Court's inoperability and principle-of-operation precedents. If the Court agrees, it can stop here.

## II.    The Board misapplied *KSR* and misread Perego.

In any event, the Board's findings regarding Perego's disclosures cannot be sustained either—an independent basis for reversal. In particular, the Board's finding that Perego suggests the prospect of making its modules JEDEC-compatible rests on a misapplication of *KSR* and lacks substantial evidence. BBr. 48–56. Much of Samsung's rebuttal again tries to assume away the dispute by asserting that Perego actually *discloses* JEDEC-compliant modules. *See, e.g.*, RBr. 59, 60, 64. But, again, that premise fails. *Supra* Section I.A.2. And Samsung's attempts to engage with Netlist's arguments on their own terms fare no better.

### A.    *KSR*'s "market forces" rationale cannot be used to expand the teachings of a single reference.

Samsung's defense of the Board's application of *KSR*, in particular, backfires. Samsung does not defend the idea that the Board could permissibly invoke "market forces" to justify broadly reading Perego to suggest JEDEC-compliance if Perego does not expressly disclose such compliance. So, to the extent the Board did so, this was undisputedly legal error. BBr. 49–51.

Samsung instead reverses course, contending (at 38–41, 59) that the Board merely found that market forces would have driven a skilled artisan to *modify*

Perego's modules to make them JEDEC-compliant. But this contention, of course, is at odds with Samsung's argument that Perego *already* discloses JEDEC-compliant modules. A skilled artisan would not need to modify Perego's modules to make them JEDEC-compliant if Perego disclosed such modules.

In the end, Samsung is on the horns of a dilemma. If the Board relied on market forces to inform its reading of Perego, that was error (as Samsung does not dispute). BBr. 49–51. If, in contrast, the Board relied on market forces to supply a reason to *modify* Perego, that reinforces the point that Perego itself does not disclose JEDEC-compliant modules and that a modification—one that would have made Perego "non-functional for Rambus," Appx29; Appx83—was required to arrive at the claimed invention. Either way, the Board committed legal error.

### B. The Board's finding that Perego suggests JEDEC-compliant modules lacks substantial evidence.

Perego's disclosure of standard memory system concepts common to Rambus and JEDEC would not suggest to a skilled artisan that Perego's Rambus system should be converted to the competing JEDEC standard. BBr. 51–56. Samsung's contrary arguments lack merit.

At the outset, it is worth taking a step back from the details and emphasizing the oddity of the Board's findings about Perego. Samsung concedes that "Rambus had developed a different technology to try to compete with JEDEC" and that there were "important technical difference[s]" between the systems. RBr. 4. Yet the

23

Board read a Rambus patent—invented by the principal architect of the Rambus XDR system—to suggest modifications that would have made the disclosed system *incompatible* with Rambus and instead compatible with the system of its principal competitor. *See* Appx29 (proposed modification "would make Perego's system non-functional for Rambus, not for JEDEC"); Appx83 (same). That is an implausible conclusion. Samsung has no answer to this common-sense point.

Against this backdrop, and as explained further below, the snippets of Perego on which the Board relied as purportedly suggesting JEDEC-compliance do no such thing. *Cf. Impax Laby's Inc. v. Lannett Holdings Inc.*, 893 F.3d 1372, 1379–81 (Fed. Cir. 2018) (discounting prior-art reference's passing reference to using zolmitriptan in a nasal spray because the reference, "as a whole, [was] not about intranasal formulations of zolmitriptan"); *In re Wright*, 866 F.2d 422, 426 (Fed. Cir. 1989) (rejecting obviousness argument that required "taking statements [from the prior art] wholly out of context"). Samsung fails to show otherwise.

a.     *Buses.* Perego's reference to "buses" would not suggest JEDEC-compliance. BBr. 51–52. The very evidence Samsung quotes (at 32) makes clear beyond doubt that buses are a feature of *both* JEDEC *and* Rambus.

That remains so even if Perego discloses buses as an alternative to point-to-point links, *see* RBr. 30–31, 61. Samsung's argument otherwise is logically flawed. Samsung contends (at 31) that a skilled artisan would "understand that alternative

embodiments in Perego that do *not* use this point-to-point topology would *not* use a Rambus architecture." But not all Rambus systems require a point-to-point topology. *See, e.g.*, Appx7007–7009; Appx11414–11415 (¶ 49). As Netlist has explained, and Samsung does not dispute, the point-to-point topology is a feature of Rambus XDR specifically. BBr. 18; Appx11446 (¶ 96). Accordingly, Perego embodiments that do not use point-to-point links could still be Rambus.

b.    *Data width.* Samsung repeats the Board's errors as to data width.

*First*, Samsung, like the Board, ignores that the number of links between Perego's module and memory controller is not the same thing as the "memory device access width." *See* RBr. 33–34. Perego expressly distinguishes the two concepts. *See* Appx7341 (14:19–27). So Perego's disclosure of using 64 pins between the module and the controller does not suggest a 64-bit-wide interface between the module and the memory devices. BBr. 52–53.

The Board's statement that "Perego discloses a serialization ratio of 1:1," Appx70, does not suggest otherwise. *Contra* RBr. 34. The Board made this observation in the '215 decision in the context of concluding that Perego discloses "ranks" (which is not an issue on appeal). Appx70–71; *see* RBr. 15.[6] The Board

---

[6] Netlist has not challenged Samsung's claim construction of "rank," see RBr. 14–15, because the construction of that term is irrelevant to the patentability disputes in these IPRs. *See* Appx634–635 (Netlist's patent owner response noting

nowhere found that Perego would use a 1:1 serialization ratio *when connecting the controller with a given module via 64 pins*. Samsung cannot backfill the decision with that reasoning on appeal. *See Align*, 771 F.3d at 1324.

*Second*, there is far more to JEDEC than data width, as Samsung tacitly concedes. *See* RBr. 61. So even a disclosure of a 64-bit-width interface between the module and the memory devices would not necessarily suggest JEDEC compliance. BBr. 53–54. Samsung offers no response.

    *c.*    *Control lines.* Samsung does not defend the idea that a generic reference to control lines suggests JEDEC compliance. Instead, Samsung contends that Perego discloses specific types of control lines—for row address strobe (RAS) signals and column address strobe (CAS) signals—that are unique to the JEDEC architecture. *See* RBr. 18, 23, 35–37, 61.

But Samsung's premise is wrong. RAS and CAS signal lines are *not* unique to JEDEC (much less any particular JEDEC standard). *See, e.g.*, Appx6999 (illustrating a generic "DRAM read operation" involving RAS and CAS signal lines); Appx7001 ("conventional DRAM" from the 1970s involved RAS and CAS signal lines); Appx7127 (both JEDEC and pre-JEDEC asynchronous DRAMs used

---

its disagreement with Samsung's construction but applying the construction for purposes of responding to the petition). Netlist, however, has challenged the construction of "rank" in Case No. 24-2304 in the context of U.S. Patent No. 7,619,912.

RAS and CAS signal lines). So Perego's reference to these types of control lines is no more probative than its reference to control lines generally.

    *d.* *Flexibility and upgradeability.* Perego's flexibility and backward- and forward-compatibility would counsel *against*—not for—making Perego's modules JEDEC-compatible. That is because, if the modules were so modified, they would no longer have such backward- and forward-compatibility—a point Samsung does not dispute on the facts. *Supra* Section I.B.2; BBr. 54–55; *contra* RBr. 37–38.

    More fundamentally, Perego's reference to flexibility—contrary to Samsung's suggestion (at 62)—does not suggest that any modifications of the reference are fair game for obviousness purposes no matter the consequences. A generalized desire for flexibility is precisely the sort of generic motivation that is legally insufficient to establish obviousness. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012) (expert's testimony that "[t]he motivation to combine would be because you wanted to build something better … more efficient, [and] cheaper" was insufficient because it was "generic" and bore "no relation to any specific combination of prior art elements").[7]

---

    [7] Samsung suggests in passing (at 40) that a skilled artisan would have been motivated to implement Perego's data buffers in a "JEDEC-compliant memory architecture" to reduce electrical load. But the Board did not rely on any such rationale in its motivation-to-combine analysis, so it cannot serve as a basis for affirmance. *See Align*, 771 F.3d at 1324.

In sum, Samsung fails to rebut the critical point that the Perego features on which the Board relied are simply generic features of memory modules—akin to magnetic tape in the Betamax-VHS example. BBr. 4. Nothing about those generic features would have prompted a skilled artisan to gut Perego's modules and replace them with the modules of Perego's company's principal competitor. The Board's conclusion otherwise cannot be sustained.

### C. Samsung concedes that the Board misunderstood the difference between memory devices and memory modules.

Samsung does not dispute that the Board erred in referring to a DIMM as a "memory device." RBr. 63. Nor does Samsung dispute that the DDR2 SDRAMs mentioned in Perego are JEDEC-compliant memory *devices*, not JEDEC-compliant memory *modules*. That is an immensely important point: Perego can use its buffer translation functionality to accommodate JEDEC memory devices *without needing JEDEC memory modules*. But the Board appeared to overlook this point based on its failure to recognize the distinction between memory devices (chips) and memory modules (memory hardware that includes the chips).

Samsung contends (at 63) that the Board's conflation of memory devices and memory modules was merely a "stray statement" that constitutes harmless error. That contention is belied by the fact that Samsung's defense of Board's decision makes the same error of logic the Board made. Samsung—like the Board—cites Perego's disclosure of DDR2 memory *devices* and then reasons from

28

there that "Perego's disclosure is concerned with more than just one type of memory *module*." RBr. 51–52 (quoting Appx27; Appx81) (emphasis added). But, because Perego can put a *DDR2 memory device* on a *Rambus memory module*, the latter proposition does not follow from the former. BBr. 57.

The bottom line is that Perego's compatibility with JEDEC *devices* does not in any way imply compatibility with JEDEC *modules*. Samsung—like the Board— errs in concluding otherwise.

## III.    If the Court agrees that a skilled artisan would not have modified Perego's modules to be JEDEC-compliant, reversal is warranted.

Samsung does not dispute that every obviousness ground it presented below relied on combining Perego and JESD79-2 to arrive at JEDEC-compliant modules. *See also* BBr. 4, 25 & n.7, 57, 61. So, if the Court agrees that this modification is not viable, it should reverse and instruct the Board to find the challenged claims not unpatentable. *Id.*

The final sentence of Samsung's brief contains a passing request for the Court to "remand for the Board to consider the remaining Grounds" if it agrees with Netlist's appeal arguments. RBr. 68. But Samsung fails to explain why that relief would be warranted and has therefore forfeited this request.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (citation omitted).

That rule applies here: Samsung forfeited its request for remand for consideration of unaddressed grounds by failing to develop any argument in favor of that relief. *See Knox v. Dep't of Just.*, 125 F.4th 1059, 1067 (Fed. Cir. 2025) (finding appellant's request for reassignment on remand forfeited because his argument for doing so was "limited to one sentence, which is not even found in the argument section of his brief"); *Safeway Stores 46 Inc. v. WY Plaza LC*, 65 F.4th 474, 496 (10th Cir. 2023) (reversing denial of summary judgment and holding that appellee forfeited any argument for remand for further summary-judgment proceedings by failing to request that relief in its appellate brief).

## IV.    Samsung's admissions confirm that the Board violated the APA.

Finally, the Board's failure to address one of Netlist's key arguments—that making Perego's modules JEDEC-compliant would destroy Perego's flexibility and translation functionality—violated the APA and requires at least vacatur. BBr. 57–61.

This alternative request for relief is not an "afterthought," *contra* RBr. 64—nor was the underlying argument the Board ignored. *See* BBr. 59 (collecting numerous record citations where Netlist made this argument below). Indeed, Netlist's argument on this point had its own heading in Netlist's patent owner response. Appx655–656. Yet the Board never mentioned it. *But see Provisur Techs., Inc. v. Weber, Inc.*, 50 F.4th 117, 124 (Fed. Cir. 2022) (Board's failure to

address party's argument "preclude[d] [the Court] from engaging in meaningful appellate review and, therefore, violate[d] the APA").

Samsung essentially admits as much. Samsung does not deny that the Board ignored Netlist's argument that, if a skilled artisan made Perego JEDEC-compliant, it could no longer translate between different generations of memory devices and memory modules. *See* RBr. 66–67. That admission alone precludes affirmance.

Samsung suggests that the Board was justified in disregarding the argument because Netlist did not frame it clearly enough. *Id.* But the record belies that assertion. One need look no further than the introduction to Netlist's patent owner response. Netlist quoted Perego's description of its translation functionality, Appx628, noted that Perego "provides DDR2 SDRAM compatibility *without* modifying its non-JEDEC, flexible architecture," Appx628–629, and explained:

> [M]odifying Perego's modules to comply with JESD21-C's RDIMM requirements would cripple core functionalities described as benefits by Perego. For example, this drastic change to Perego would defeat the very support for "new generations of memory devices while retaining backward compatibility with existing generations of memory devices" touted by Perego and relied upon by Petitioner.

Appx629 (quoting Perego); BBr. 59 (collecting citations). The Board's complete silence on this issue was not "'commensurate' with Netlist's arguments." *Contra* RBr. 66.

Samsung's suggestion that the Board somehow implicitly addressed Netlist's argument by discussing Perego's "flexibility," RBr. 65, is likewise

meritless. The Board's nod to Perego's flexibility nowhere addressed Netlist's

point that, *if a skilled artisan made Perego's modules JEDEC-compliant*, they

would no longer have that flexibility. The record is one-sided on this point in

Netlist's favor, so reversal is the proper remedy. *Supra* Section I.B.2. But, at the

very least, the Board's complete (and undisputed) failure to acknowledge this

argument—much less address it—requires vacatur.

## CONCLUSION

The Board's decisions should be reversed or vacated.

August 14, 2025

Respectfully submitted,

*/s/ William H. Milliken*

William H. Milliken
Richard M. Bemben
Richard A. Crudo
STERNE KESSLER GOLDSTEIN &
 FOX PLLC
1101 K Street, NW
Floor 10
Washington, DC 20005
(202) 371-2600

*Counsel for Appellant Netlist, Inc.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>2025-1286, 2025-1296</u>

**Short Case Caption:** <u>Netlist, Inc. v. Samsung Electronics Co., Ltd.</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>6,978</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>08/14/2025</u>

Signature: <u>/s/ William H. Milliken</u>

Name: <u>William H. Milliken</u>

Save for Filing